# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| CASTLE BRANDS INC., MARK ANDREWS III, JOHN F. BEAUDETTE, HENRY C. BEINSTEIN, PHILLIP FROST, RICHARD M. KRASNO, RICHARD J. LAMPEN, STEVEN D. RUBIN, MARK ZEITCHICK, AUSTIN, NICHOLS & CO., INC., and ROOK MERGER SUB, INC., | ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on August 28, 2019 (the "Proposed Transaction"), pursuant to which Castle Brands Inc. ("Castle Brands" or the "Company") will be acquired by Austin, Nichols & Co., Inc. ("Parent"), a Delaware corporation and an affiliate of Pernod Ricard S.A., and Rook Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Austin").

2.      On August 28, 2019, Castle Brands' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Austin.  Pursuant to the terms of the Merger Agreement, Merger Sub

commenced a tender offer (the "Tender Offer") to purchase all of Castle Brands' outstanding common stock for $1.27 in cash.  The Tender Offer is set to expire on October 8, 2019.

3.      On September 11, 2019, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Castle Brands common stock.

9.      Defendant Castle Brands is a Florida corporation and maintains its principal executive offices at 122 East 42nd Street, Suite 5000, New York, New York 10168. Castle Brands' common stock is traded on the New York Stock Exchange American under the ticker symbol "ROX."

10.     Defendant Mark Andrews III is Chairman of the Board of the Company.

11.     Defendant John F. Beaudette is a director of the Company.

12.     Defendant Henry C. Beinstein is a director of the Company.

13.     Defendant Phillip Frost is a director of the Company.

14.     Defendant Richard M. Krasno is a director of the Company.

15.     Defendant Richard J. Lampen is President, Chief Executive Officer, and a director of the Company.

16.     Defendant Steven D. Rubin is a director of the Company.

17.     Defendant Mark Zeitchick is a director of the Company.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20.     Defendant Merger Sub is a Florida corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Castle Brands (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of August 27, 2019, there were approximately 170,372,173 shares of Castle Brands common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28.     Castle Brands is a developer and international marketer of premium and super-

premium brands including: Jefferson's®, Jefferson's Presidential SelectTM, Jefferson's Reserve®, Jefferson's Ocean Aged at Sea Bourbon®, Jefferson's Wine Finish Collection and Jefferson's Wood Experiments, Goslings® Rums, Goslings® Stormy Ginger Beer, Knappogue Castle Whiskey®, Clontarf® Irish Whiskey, Pallini® Limoncello, Boru® Vodka, Brady's® Irish Cream, The Arran Malt® Single Malt Scotch Whisky, The Robert Burns Scotch Whisky, and Machrie Moor Scotch Whisky.

29.     On August 28, 2019, Castle Brands' Board caused the Company to enter into the Merger Agreement with Austin.

30.     Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of Castle Brands' outstanding common stock for $1.27 in cash.

31.     According to the press release announcing the Proposed Transaction:

Pernod Ricard (Euronext Ticker RI; ISIN Code: FR0000120693) and Castle Brands Inc. (NYSE American: ROX), today announced that they have entered into a definitive agreement under which Pernod Ricard, through a subsidiary, will acquire all of the outstanding common stock of Castle Brands for $1.27 per share in cash, or approximately $223 million, plus the assumption of debt, through a cash tender offer followed by a merger.

Under the terms of the merger agreement, which has been unanimously approved by the Castle Brands Board of Directors, Castle Brands shareholders will receive $1.27 in cash for each outstanding share of Castle Brands common stock they own, representing a 92% premium to Castle Brands' closing share price on August 27, 2019, and a 109% premium to the 30-day volume weighted average share price through such date. . . .

The merger agreement provides for a cash tender offer to acquire all outstanding shares of Castle Brands to be launched shortly. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of Castle Brands' outstanding shares, early termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary conditions. Once the tender offer is successfully completed, Pernod Ricard will acquire all shares not acquired in the tender offer through a second-step merger in which the holders of the outstanding shares of Castle Brands common stock not tendered in the offer will receive the same per share price paid in the tender offer, in cash. The transaction is expected to close in the fourth quarter

of 2019.

BofA Merrill Lynch acted as financial advisor to Pernod Ricard and Debevoise & Plimpton LLP acted as its legal advisor. Perella Weinberg Partners and Houlihan Lokey acted as financial advisors to Castle Brands, Holland & Knight LLP acted as Castle Brands' legal advisor, and Sullivan & Cromwell LLP acted as legal advisor to Castle Brands' financial advisors.

32.     The Merger Agreement contains a "no solicitation" provision that prohibits the

Individual Defendants from soliciting alternative proposals and severely constrains their ability to

communicate and negotiate with potential buyers who wish to submit or have submitted

unsolicited alternative proposals.  Section 6.04(a) of the Merger Agreement provides:

Except as expressly permitted by this Section 6.04, from the date of this Agreement until the Effective Time or, if earlier, the termination of this Agreement in accordance with Article VIII, the Company shall not, shall cause its Subsidiaries and its and their respective directors, officers and employees not to, and shall cause its other Representatives and its controlled Affiliates' other Representatives not to, directly or indirectly (i) solicit, initiate, knowingly encourage, induce or facilitate any inquiries regarding, or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, any Takeover Proposal, (ii) conduct or engage in any discussions or negotiations regarding, or furnish to any third party any non-public information relating to the Company or any of its Subsidiaries with or for the purpose of facilitating, inducing or encouraging, any Takeover Proposal (other than solely, in response to an unsolicited inquiry, (A) to contact a Person making a Takeover Proposal to clarify the terms thereof or (B) to refer inquiring Persons to this Section 6.04), (iii) except where the Company Board makes a good faith determination, after consultation with outside legal counsel, that the failure to do so would be inconsistent with its fiduciary duties, amend or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any of its Subsidiaries, (iv) take any action to exempt any Person (other than Parent and its Subsidiaries) from the restrictions on "business combinations" or any similar provision contained in applicable Takeover Statutes or the Company's organizational and other governing documents, (v) approve, endorse or recommend any Takeover Proposal, (vi) enter into any letter of intent, acquisition agreement, merger agreement or other similar agreement (1) relating to any Takeover Proposal, (2) that is intended to or would reasonably be expected to lead to a Takeover Proposal or (3) that would require any Takeover Proposal (other than an Acceptable Confidentiality Agreement) (each, a "Company Acquisition Agreement") or (vii) resolve to do any of the foregoing. The Company shall, and shall cause its Subsidiaries and its and their respective directors, officers and employees to, and shall cause its other Representatives to, cease immediately and cause to be terminated any and all existing activities, discussions or

6

negotiations, if any, that may be ongoing with any third party with respect to any Takeover Proposal and shall cause any such third party (or its agents or advisors) in possession of non-public information in respect of the Company or any of its Subsidiaries that was furnished by or on behalf of the Company and its Subsidiaries to return or destroy (and confirm destruction of) all such information, subject to Section 6.04(b), and shall terminate access of all Persons (other than Parent, the Company and their respective Subsidiaries and Representatives) to any "data room" with respect to any Takeover Proposal.

33.     Additionally, the Company must promptly advise Austin of any proposals or inquiries received from other parties.  Section 6.04(c) of the Merger Agreement states:

> The Company shall promptly (and in any event within twenty-four (24) hours after receipt) notify Merger Sub orally and in writing in the event that the Company receives any Takeover Proposal or any inquiry, proposal or offer that would reasonably be expected to lead to a Takeover Proposal or any initial request for non-public information concerning the Company from any Person or group who has made or would reasonably be expected to make a Takeover Proposal. In such notice, the Company shall identify the third party making, and details of the material terms and conditions of, any such Takeover Proposal or inquiry or request and provide copies of any written proposals, draft agreements and all draft or executed financing commitments and related documentation. The Company shall keep Merger Sub reasonably informed on a prompt basis of the status of any such Takeover Proposal, including any changes to the timing, amount or form of consideration, conditionality or other material terms of (or any other material developments with respect to) any Takeover Proposal, including by promptly, and in any event no later than twenty-four (24) hours after receipt by the Company or any of its Affiliates or Representatives, providing to Merger Sub copies of any additional or revised written proposals, draft agreements and all draft or executed financing commitments and related documentation. The Company agrees that it and its Affiliates will not enter into any agreement with any Person subsequent to the date hereof that prohibits the Company from providing any information or materials to Merger Sub in accordance with, or otherwise complying with, this Section 6.04.

34.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Austin a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 6.04(d) of the Merger Agreement provides:

> Except as expressly permitted by this Section 6.04(d), neither the Company Board nor any committee thereof shall (i) (A) change, withhold, withdraw, modify or qualify, or authorize or resolve to or publicly propose or announce its intention to

change, withhold, withdraw, modify or qualify, in each case, in any manner adverse to Parent, the Company Board Recommendation, (B) make any public statement inconsistent with the Company Board Recommendation, (C) if a Takeover Proposal shall have been publicly announced or disclosed, either fail to recommend against such Takeover Proposal or fail to reaffirm the Company Board Recommendation as promptly as practical (but in any event within five (5) Business Days) following a written request by Parent to do so, (D) fail to recommend, in a Solicitation/Recommendation Statement on Schedule 14D-9, against any Takeover Proposal that is a tender offer or exchange offer subject to Regulation 14D promulgated under the Exchange Act within ten (10) Business Days after the commencement (within the meaning of Rule 14d-2 under the Exchange Act) of such tender offer or exchange offer (it being understood and agreed that any communication made in accordance with Section 6.04(a), or the failure by the Company Board to take a position with respect to such tender offer or exchange offer, shall not be deemed a change to the Company Board Recommendation if such communication is made or such position is taken prior to the tenth (10th) Business Day after the commencement (within the meaning of Rule 14d-2 under the Exchange Act) of such tender offer or exchange offer, or (E) adopt, approve or recommend to the shareholders of the Company, or formally resolve to or publicly propose or announce its intention to adopt, approve or recommend to the shareholders of the Company, a Takeover Proposal (any action described in this clause (i), a "Company Adverse Recommendation Change") or (ii) authorize or cause the Company or any of its Subsidiaries to enter into a Company Acquisition Agreement. Notwithstanding the foregoing or anything to the contrary in this Agreement, at any time prior to the earlier of the Offer Closing or if the Offer Termination has occurred, the Effective Time, the Company Board may, in response to a Superior Proposal or Intervening Event, make a Company Adverse Recommendation Change of the type described in clause (A) of the definition thereof and, solely in response to a Superior Proposal, terminate this Agreement in order to enter into (or permit any Subsidiary to enter into) a Company Acquisition Agreement if, (i) the Company Board, prior to effecting the Company Adverse Recommendation Change or delivering notice of termination pursuant to Section 8.04(a), provides Merger Sub five (5) Business Days prior written notice of its intention to take such action, which notice shall include a description in reasonable detail of such Superior Proposal (and any written proposals, draft agreements and all draft or executed financing commitments and related documentation thereto) or Intervening Event, (ii) the Company is and remains in compliance with this Section 6.04; (iii) during the five (5) Business Days following such written notice, the Company Board and, if requested by Merger Sub, and Parent's Representatives have negotiated in good faith with Merger Sub regarding any revisions to the terms and conditions of the transactions contemplated by this Agreement, including the Merger; and (iv) at the end of the five (5) Business Day period described in the foregoing clause (iii), the Company Board concludes in good faith (taking into account any adjustment or modification of the terms of this Agreement to which Parent and Merger Sub have committed to in writing): (1) after consultation with the Company's outside legal counsel and financial advisors, that such Takeover

Proposal (if any) continues to constitute a Superior Proposal, if applicable, and, after consultation with the Company's outside legal counsel, that the failure to make a Company Adverse Recommendation Change or the failure to terminate this Agreement in order to enter into (or permit any Subsidiary of the Company to enter into) a Company Acquisition Agreement, as applicable, would be inconsistent with its fiduciary duties under applicable Law or (2) after consultation with the Company's outside legal counsel, that the failure to make a Company Adverse Recommendation Change in response to such Intervening Event, as applicable, would be inconsistent with its fiduciary duties under applicable Law. Any material change to the terms, facts and circumstances relating to the Superior Proposal or Intervening Event will be deemed to be a new Superior Proposal or Intervening Event, as applicable, for purposes of this Section 6.04; provided that the time periods referred to in the foregoing clauses (i) through (iv) shall be three (3) Business Days instead of five (5) Business Days.

35.    The Merger Agreement also provides for a "termination fee" of $10 million payable by the Company to Austin if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

36.    Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

37.    As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

38.    First, the Solicitation Statement omits material information regarding the Company's financial projections.

39.    The Solicitation Statement fails to disclose: (i) all line items used to calculate (a) adjusted gross sales, (b) CAMP, (c) EBITDA, and (d) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

40.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion.

41.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Perella Weinberg Partners L.P. ("Perella") and Houlihan Lokey Capital, Inc. ("Houlihan").

42.     With respect to Perella's Research Analyst Price Targets analysis, the Solicitation Statement fails to disclose: (i) the source of the price target observed by Perella in the analysis; and (ii) the individual inputs and assumptions underlying the 12.5% discount rate.

43.     With respect to Perella's Selected Publicly Traded Companies Analysis, the Solicitation Statement fails to disclose: (i) Perella's basis for applying ranges of multiples of 15.0x to 19.0x and 13.5x to 18.0x; (ii) the debt, cash, cash equivalents, and investments used by Perella in the analysis; and (iii) the fully diluted shares of the Company.

44.     With respect to Perella's Selected Transactions Analysis, the Solicitation Statement fails to disclose: (i) Perella's basis for applying ranges of multiples of 3.0x to 4.5x and 9.0x to 13.0x; (ii) the debt, cash, cash equivalents, and investments used by Perella in the analysis; and (iii) the fully diluted shares of the Company.

45.     With respect to Perella's Sum-of-the-Parts Analysis, the Solicitation Statement fails to disclose: (i) all line items used to calculate CAMP; (ii) the debt, cash, cash equivalents, and investments used by Perella in the analysis; and (iii) the fully diluted shares of the Company.

46.     With respect to Perella's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 13.0%; (iii) the terminal values for the Company; (iv) Perella's basis for using terminal value multiples

ranging from 14.0x to 18.0x; (v) the debt, cash, cash equivalents, and investments use by Perella in the analysis; and (vi) the fully diluted shares of the Company.

47.     With respect to Houlihan's Selected Companies Analysis, the Solicitation Statement fails to disclose: (i) Houlihan's basis for applying ranges of 17.0x to 21.0x and 16.0x to 20.0x; (ii) the cash, cash equivalents, restricted cash, equity method investments, federal tax savings from net operating losses, debt, and non-controlling interests used by Houlihan in the analysis; and (iii) the fully diluted shares of the Company.

48.     With respect to Houlihan's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) Houlihan's basis for applying a range of terminal value multiples of 14.0x to 20.0x; (iii) the individual inputs and assumptions underlying the discount rates ranging from 11.50% to 14.50%; (iv) the terminal values for the Company; (v) the cash, cash equivalents, restricted cash, equity method investments, federal tax savings from net operating losses, debt, and non-controlling interests used by Houlihan in the analysis; and (vi) the fully diluted shares of the Company.

49.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

50.     Third, the Solicitation Statement omits material information regarding potential conflicts of interest of Perella and Houlihan.

51.     The Solicitation Statement fails to disclose the nature of the investment banking services that "Perella [] and its affiliates are currently providing . . . to Parent on matters unrelated to the Transaction," as well as the amount of compensation Perella expects to receive for providing such services.

52.     The Solicitation Statement fails to disclose when Perella was engaged by "Pernod Ricard regarding the possible disposition of a brand."

53.     The Solicitation Statement fails to disclose whether Houlihan has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation Houlihan received for providing such services.

54.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

55.     Fourth, the Solicitation Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

56.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

57.     The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

58.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

59.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact
or omit to state any material fact necessary in order to make the statements made,
in the light of the circumstances under which they are made, not misleading . . . in
connection with any tender offer or request or invitation for tenders[.]

61.     Defendants disseminated the misleading Solicitation Statement, which contained

statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under

which they were made, omitted to state material facts necessary to make the statements therein not

misleading.

62.     The Solicitation Statement was prepared, reviewed, and/or disseminated by

defendants.

63.     The Solicitation Statement misrepresented and/or omitted material facts in

connection with the Proposed Transaction as set forth above.

64.     By virtue of their positions within the Company and/or roles in the process and the

preparation of the Solicitation Statement, defendants were aware of this information and their duty

to disclose this information in the Solicitation Statement.

65.     The omissions in the Solicitation Statement are material in that a reasonable

shareholder will consider them important in deciding whether to tender their shares in connection

with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available.

66.     Defendants knowingly or with deliberate recklessness omitted the material

information identified above in the Solicitation Statement, causing statements therein to be

materially incomplete and misleading.

67.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

68.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

69.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

70.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

72.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

73.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

74.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

75.    The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

76.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Austin)

77.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

78.    The Individual Defendants and Austin acted as controlling persons of Castle Brands within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as directors of Castle Brands and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

79.    Each of the Individual Defendants and Austin was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

80.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Solicitation Statement contains the unanimous

recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

81.     Austin also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

82.     By virtue of the foregoing, the Individual Defendants and Austin violated Section 20(a) of the 1934 Act.

83.     As set forth above, the Individual Defendants and Austin had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

84.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

85.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 17, 2019

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      300 Delaware Avenue, Suite 1220
      Wilmington, DE 19801
      Telephone: (302) 295-5310
      Facsimile: (302) 654-7530
      Email: bdl@rl-legal.com
      Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*